IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

No. 5:11-CV-162-FL

| | |
|---|---|
| JOYCE DOBBINS WYNNE, ) | |
| ) | |
| Plaintiff/Claimant, ) | |
| ) | |
| ) | **MEMORANDUM AND** |
| v. ) | **RECOMMENDATION** |
| ) | |
| MICHAEL J. ASTRUE, Commissioner of ) | |
| Social Security, ) | |
| ) | |
| Defendant. ) | |

This matter is before the court on the parties' cross motions for judgment on the pleadings [DE-39, DE-41] pursuant to Fed. R. Civ. P. 12(c). Claimant Joyce Dobbins Wynne ("Claimant") filed this action pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3) seeking judicial review of the denial of her applications for a period of disability, Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") payments. The time for filing responsive briefs has expired and the pending motions are ripe for adjudication. Having carefully reviewed the administrative record and the motions and memoranda submitted by the parties, this court recommends denying Claimant's Motion for Judgment on the Pleadings, granting Defendant's Motion for Judgment on the Pleadings and upholding the final decision of the Commissioner.

**STATEMENT OF THE CASE**

Claimant protectively filed an application for a period of disability, DIB and SSI on 22 September 2008, alleging disability beginning 1 January 2008. (R. 14). Both claims were denied initially and upon reconsideration. *Id.* A hearing before the Administrative Law Judge ("ALJ") was held on 28 April 2010, at which Claimant was represented by counsel and a vocational expert ("VE")

appeared and testified. (R. 24-60). On 4 June 2010, the ALJ issued a decision denying Claimant's request for benefits. (R. 11-23). On 25 February 2011, the Appeals Council denied Claimant's request for review. (R. 1-7). Claimant then filed a complaint in this court seeking review of the now final administrative decision.

## STANDARD OF REVIEW

The scope of judicial review of a final agency decision regarding disability benefits under the Social Security Act ("Act"), 42 U.S.C. § 301 *et seq.*, is limited to determining whether substantial evidence supports the Commissioner's factual findings and whether the decision was reached through the application of the correct legal standards. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). "The findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive . . . ." 42 U.S.C. § 405(g). Substantial evidence is "evidence which a reasoning mind would accept as sufficient to support a particular conclusion." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966). While substantial evidence is not a "large or considerable amount of evidence," *Pierce v. Underwood*, 487 U.S. 552, 565 (1988), it is "more than a mere scintilla . . . and somewhat less than a preponderance." *Laws*, 368 F.2d at 642. "In reviewing for substantial evidence, [the court should not] undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the Secretary." *Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001) (quoting *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996)). Rather, in conducting the "substantial evidence" inquiry, the court's review is limited to whether the ALJ analyzed the relevant evidence and sufficiently explained his or her findings and rationale in crediting the evidence. *Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439-40 (4th Cir. 1997).

## DISABILITY EVALUATION PROCESS

The disability determination is based on a five-step sequential evaluation process as set forth in 20 C.F.R. §§ 404.1520, 416.920 under which the ALJ is to evaluate a claim:

> The claimant (1) must not be engaged in "substantial gainful activity," i.e., currently working; and (2) must have a "severe" impairment that (3) meets or exceeds [in severity] the "listings" of specified impairments, or is otherwise incapacitating to the extent that the claimant does not possess the residual functional capacity to (4) perform . . . past work or (5) any other work.

*Albright v. Comm'r of the SSA*, 174 F.3d 473, 474 n.2 (4th Cir. 1999). "If an applicant's claim fails at any step of the process, the ALJ need not advance to the subsequent steps." *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995). The burden of proof and production during the first four steps of the inquiry rests on the claimant. *Id.* At the fifth step, the burden shifts to the ALJ to show that other work exists in the national economy which the claimant can perform. *Id.*

In this case, Claimant alleges the following errors by the ALJ: (1) improper evaluation of a state agency non-examining consultant's opinion; (2) improper assessment of Claimant's credibility; and (3) improper assessment of Claimant's residual functional capacity ("RFC"). Pl.'s Mem. Supp. Pl.'s Mot. J. Pleadings ("Pl.'s Mem.") at 1.

## FACTUAL HISTORY

### I. ALJ's Findings

Applying the above-described sequential evaluation process, the ALJ found Claimant "not disabled" as defined in the Act. At step one, the ALJ found Claimant was no longer engaged in substantial gainful employment. (R. 16). Next, the ALJ determined Claimant had the following severe impairments: degenerative disc disease ("DDD"), hypertension, ischemia and bilateral shoulder pain. (R. 17). However, at step three, the ALJ concluded these impairments were not

3

severe enough, either individually or in combination, to meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. *Id.* Prior to proceeding to step four, the ALJ assessed Claimant's RFC, finding Claimant had the ability to perform less than the full range of light unskilled work[1] requiring no concentrated exposure to hazards that has the following physical limitations: occasional climbing of ramps and stairs, no climbing of ropes, ladders and scaffolds and occasional overhead reaching with either extremity. In making this assessment, the ALJ found Claimant's statements about her limitations not fully credible. (R. 20).

At step four, the ALJ concluded Claimant did not have the RFC to perform the requirements of her past relevant work. (R. 22). Nonetheless, at step five, upon considering Claimant's age, education, work experience and RFC, the ALJ determined Claimant is capable of adjusting to the demands of other employment opportunities that exist in significant numbers in the national economy. *Id.*

## II. Claimant's Testimony at the Administrative Hearing

At the time of Claimant's administrative hearing, Claimant was 54 years old and unemployed. (R. 28, 30). Claimant is a high school graduate. (R. 34). Claimant had past relevant work experience in human resources. (R. 32-33). Claimant was last employed in 2008 as part-time cashier but left her job due to her impairments. (R. 30-31, 38). Claimant has no medical insurance.

---

[1] Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If an individual can perform light work, he or she can also perform sedentary work, unless there are additional limiting factors such as the loss of fine dexterity or the inability to sit for long periods of time. 20 C.F.R. §§ 404.1567(b), 416.967(b).

4

(R. 60).

Claimant explained numerous medical conditions support her disability claim and her inability to work full-time. These medical conditions include high blood pressure, an enlarged heart, headaches and neck, back, leg and shoulder pain. (R. 38-41, 46-47). Regarding her blood pressure, Claimant testified that it is difficult to control and when it is elevated, she becomes lightheaded and has difficulty with her balance. (R. 39-40). Claimant testified to experiencing chest pain and swelling in her feet as a result of fluid buildup around her heart. (R. 40). Claimant attributed her neck pain to a pinched nerve and testified to experiencing pain that runs across both shoulders, down her back and to her right leg. (R. 41). Claimant testified that her headaches prevent her from sleeping at night. (R. 46). Claimant takes numerous medications, the side effects of which include drowsiness, concentration difficulties and bladder control issues. (R. 42, 44). Claimant testified that she had not visited the emergency room or her physician "in a long time" because her medications provided relief from pain. Claimant subsequently testified that her pain is worsening. (R. 44).

Claimant testified that she initially followed medical advice and attempted to walk one half mile daily; however, she had to stop exercising because she fell and passed out often. (R. 42-43). Claimant testified to keeping her feet elevated at least 45 minutes a day and "sometimes three hours." (R. 43). Claimant testified that on an average day, she "cr[ies] half the day" and otherwise spends the day laying down or sitting. (R. 45). Claimant testified that she never leaves her home, she depends on a neighbor for her groceries and she has difficulty dressing. (R. 45-46). Claimant testified she can only use her right hand, "cannot open stuff like [she] used to" and must place items "between [her] legs and try to get it with [her] left hand." (R. 60). Claimant does not drive due to the side effects of her medications. (R. 46).

5

## III. Vocational Expert's Testimony at the Administrative Hearing

Theodore Sawyer testified as a VE at the administrative hearing. (R. 50-56). After the VE's testimony regarding Claimant's past work experience (R. 51), the ALJ asked the VE to assume a hypothetical individual of the same age, education and prior work experience as Claimant and posed two hypothetical questions. First, the ALJ asked whether the individual could perform Claimant's past relevant work assuming the individual has the physical capacity to perform medium unskilled work with nonexertional limitations that include no more than occasional climbing of ramps and stairs, no climbing ladders, ropes or scaffolds and avoiding work environments subject to hazards such as machinery and heights. (R. 52). The VE testified in the negative, explaining Claimant's past work is either semi-skilled or skilled in nature; however, the VE testified the hypothetical individual could perform the following representative positions: (1) hand packager (DOT #920.587-018); (2) cleaner (DOT #919.687-014); (3) laundry worker (DOT #361.684-014). *Id.*

Next, the ALJ asked whether representative positions would be available if the hypothetical individual was capable of performing light work only. (R. 54). The VE testified the following representative positions would be available: (1) cashier II (DOT #211.462-010); (2) garment sorter (DOT #222.687-014); (3) ticket seller (DOT #211.467-030). *Id.* Third, the ALJ inquired as to whether any of the medium or light exertion positions would remain if the hypothetical individual was further limited to missing one day a week of work due to pain. (R. 54). The VE testified in the negative, stating the "job base would be fully eroded." (R. 55). In response to questioning from Claimant's counsel, the VE opined that none of the above jobs would be available if the hypothetical individual required on average a fifteen minute break per work hour and only the positions at the light level would accommodate an individual limited to standing no more than four hours in an eight

Case 5:11-cv-00162-FL   Document 45   Filed 05/30/12   Page 6 of 20

hour work day. (R. 56).

## DISCUSSION

**I.  The ALJ properly evaluated the opinion of a state agency examining consultant.**

Claimant contends the ALJ improperly evaluated the opinion of state agency examining consultant, Gonzalo A. Fernandez, M.D., dated 1 December 2008. Pl.'s Mem. at 11. This court disagrees.

"Findings of fact made by State agency . . . consultants . . . regarding the nature and severity of an individual's impairment(s) must be treated as expert opinion evidence of non-examining sources at the [ALJ] and Appeals Council levels of administrative review." S.S.R. 96-6p, 1996 SSR LEXIS 3, at *1, 1996 WL 374180, at *1. Moreover, when considering the findings of state agency consultants, the ALJ must

> evaluate the findings using relevant factors . . . , such as the [consultant's] medical specialty and expertise in [the Social Security Administration's] rules, the supporting evidence in the case record, supporting explanations provided by the [consultant], and any other factors relevant to the weighing of the opinions.

20 C.F.R. §§ 404.1527(f)(2)(ii), 416.927(f)(2)(ii). The ALJ must explain the weight given to these opinions in his decision. *Id.*; *see also* SSR 96-6p, 1996 SSR LEXIS 3, at *2, 1996 WL 374180, at *1. Of course, an ALJ is under no obligation to accept any medical opinion. *Wireman v. Barnhart*, No. 2:05-CV-46, 2006 U.S. Dist. LEXIS 62868, at *23, 2006 WL 2565245, at *8 (W.D. Va. Sept. 5, 2006) (stating an ALJ "may, under the regulations, assign no or little weight to a medical opinion, even one from a treating source . . . if he sufficiently explains his rationale and if the record supports his findings"); 20 C.F.R. §§ 404.1527(d)(3), 416.927(d)(3). In this case, the ALJ explained that Dr. Fernandez

7

opined that the claimant would be able to stand and walk 4 hours, perhaps longer, with normal to frequent breaks limited by her history of chest pain and dizziness. He also indicated that the claimant would have manipulative limitations on reaching, feeling, grasping and fingering limited by her left upper extremity pain and weakness. The undersigned affords little weight to this physician's report and conclusions because he was not a treating physician and examined the claimant on only one occasion.

(R. 21, 288-91).

Claimant faults the ALJ for considering treatment duration only and ignoring the consistency of Dr. Fernandez' opinion with the objective medical evidence and other medical opinions. In particular, Claimant contends Dr. Fernandez' opinion is supported by the following: (1) 22 October 2009 treatment record from Eric M. Janis, M.D., Claimant's cardiologist, who "found [Claimant] needed to elevate her legs when they are swollen during the day and that she suffered from dizziness with her medications every day whether sitting or standing;" (2) Claimant's "heart pathologies and her persistent symptoms of pain, shortness of breath, dizziness, weakness and swelling in her hands and feet;" and (3) Claimant's "diagnosed cervical radiculopathy and resultant neck and arm pain with weakness and difficulty grasping with her left arm." Pl.'s Mem. at 12. To the contrary, review of the evidence of record supports the ALJ's finding.

Regarding Dr. Janis' October 2009 record, the court notes that Dr. Janis' assessment did not include the findings alleged by Claimant. Rather, in summarizing Claimant's subjective complaints, Dr. Janis noted Claimant's observation that swelling in her feet "is relieved when she elevates them" and Claimant's complaint that she experiences "dizziness with medicines and most of the time with sitting or standing." (R. 446). In discussing Dr. Janis' treatment records, the ALJ acknowledged the October 2009 record and in particular Claimant's complaints of dizziness and swelling. (R. 20).

8

Regarding Claimant's diagnoses of hypertension, ischemia, hypertensive heart disease and aortic insufficiency and symptoms related thereto, the ALJ summarized Dr. Janis' treatment records dated 29 January 2009, 26 March 2009, 7 May 2009 and 23 July 2009, which documented Claimant's complaints of pain, dizziness, shortness of breath and swelling in her right hands and ankles. (R. 20, 419-21, 452, 455, 458). In summarizing Claimant's visits to the emergency department at Johnston Memorial Hospital ("JMH") on 16 October 2008 and 11 December 2008, the ALJ acknowledged Claimant's reports of chest pain, shoulder pain radiating down her left arm and dizziness. (R. 19, 293, 324). The ALJ discussed laboratory reports, including the following: (1) CT scan of the head which revealed chronic microvascular ischemic changes (R. 342), (2) a stress test which was positive for "ischemia involving the anterior wall and towards the apex" (R. 344), (3) an MRI of the brain which revealed mild degenerative white matter disease (R. 346); and (4) echocardiograms from Octrober 2008 and January 2009 which revealed an ejection fraction of 55 percent and a normal ejection fraction and cardiomegaly and aortic valve regurgitation, respectively (R. 332, 417). (R. 19). The ALJ noted further records indicating Claimant's failure to take her medications as prescribed but when compliant, her hypertension had "responded favorably to the medication regimen." (R. 21, 294, 355, 419, 454).

Regarding Claimant's DDD and back and shoulder pain, the ALJ noted Claimant's diagnoses of sciatica, low back strain and cervical spondylosis and the symptoms associated therewith including left sided flank pain, neck pain and left arm pain with numbness and tingling (R. 366, 369-70, 379, 380). The ALJ noted objective medical tests showed no significant abnormalities. (R. 21). While Claimant suggests the ALJ ignored her arm and back pain and left arm weakness, the court observes the ALJ noted Claimant's physical examinations showed no significant abnormalities – a

finding supported by Dr. Fernandez' opinion. (R. 21, 453, 456, 459, 447). In particular, Dr. Fernandez noted Claimant had no difficulty getting on and off the examination table, had a full range of motion throughout her body, including her neck, shoulders, elbows, forearms and back, had a motor strength in the right upper extremity of 5/5 with motor strength of 4/5 in her left shoulder, biceps and triceps and a left and right grip strength of 4/5 and 5/5, respectively. (R. 20, 290-91). Dr. Fernandez also found Claimant had a normal gait, could perform tandem walking without difficulty and reflexes were 2+ in the lower extremities bilaterally. (R. 20, 290-91).

Upon reviewing Claimant's argument, it is apparent that Claimant believes the ALJ improperly weighed the evidence before him. However, the court's duty is to determine if substantial evidence supports the ALJ's conclusions – not to reweigh conflicting evidence. *See Mastro*, 270 F.3d at 176 (citation omitted). In this case, the ALJ sufficiently evaluated the medical evidence in accordance with the regulatory guidelines and adequately explained the weight allocated to Dr. Fernandez' opinion. The ALJ's reliance on the fact Dr. Fernandez evaluated Claimant on only one occasion and was not a treating physician is in accordance with statutory procedure. *See* 20 C.F.R. 404.1527(c), 416.927(c). Moreover, while the ALJ did not explicitly state Dr. Fernandez' conclusions were inconsistent with the medical record, the ALJ's summary of the medical findings clearly indicates this is so. Indeed, in addition to the above medical summary, Claimant's own testimony supports the ALJ's conclusion.[2] In July 2009, Claimant advised Dr. Janis that she was walking one half mile per day and during her examination with Dr. Fernandez, Claimant stated that she can cook meals, make her bed, do laundry and go shopping. (R. 21, 289, 452). During the

---

[2] As detailed below, the court finds the ALJ's credibility determination supported by substantial evidence.

administrative hearing, Claimant testified that she worked in 2008, and while the job was part-time, she sometimes worked 50 to 60 hours a week as a result of taking on extra shifts. (R. 21, 30-31, 37). Claimant testified further that had a full-time job been available, she would have accepted the position. (R. 21, 37). Accordingly, the ALJ was within his discretion in not giving controlling weight to Dr. Fernandez' opinion. *See Koonce v. Apfel*, No. 98-1144, 166 F.3d 1209, 1999 U.S. App. LEXIS 307, at *7, 1999 WL 7864, at *2 (4th Cir. 1999) ("An ALJ's determination as to the weight to be assigned to a medical opinion will generally not be disturbed absent some indication that the ALJ has dredged up specious inconsistencies or has not given good reason for the weight afforded a particular opinion.") (internal citations and quotations omitted).

The court observes further that within this assignment of error, Claimant contends the ALJ's RFC finding cannot stand as it was made without the aid of a medical source opinion regarding Claimant's functional limitations. *See* Pl.'s Mem. at 12. In particular, Claimant contends because the ALJ accorded Dr. Fernandez' opinion little weight and rejected the medium RFC finding of state agency non-examining consultant Robert N. Pyle, M.D., the ALJ "went outside his area of expertise when diagnosing [Claimant] on her own." *Id.* In support of this proposition, Claimants relies on a First Circuit case which held that "since bare medical findings are unintelligible to a lay person in terms of residual functional capacity, the ALJ is not qualified to assess residual functional capacity based on a bare medical record." *Gordils v. Sec'y of Health & Human Servs.*, 921 F.2d 327, 329 (1st Cir. 1990).[3]

---

[3] Claimant has quoted the *Gordils* case for the proposition that "an administrative law judge lacks the qualifications to determine RFC based on raw medical evidence and must rely on the findings of a medical expert." Pl.'s Mem. at 12. However, the proper authority is the district court case of *Bard v. SSA Comm'r*, 736 F. Supp. 2d 270, 277 (D. Me. 2010), which relied on *Gordils*.

11

When viewed in context, however, it is evident the *Gordils* case does not stand for the proposition that an ALJ's RFC finding must fail if the record lacks an identical finding by a treating source or a state agency consultant. Indeed, as the First Circuit has acknowledged, the ALJ is not

> precluded from rendering common-sense judgments about functional capacity based on medical findings, as long as the [ALJ] does not overstep the bounds of a lay person's competence and render a medical judgment. . . . [I]f the only medical findings in the record *suggested that a claimant exhibited little in the way of physical impairments*, but nowhere in the record did any physician state in functional terms that the claimant had the exertional capacity to meet the requirements of sedentary work, the *ALJ would be permitted to reach that functional conclusion himself.*

*Gordils*, 921 F.2d at 329 (emphasis added). In the instant case, Claimant's treating physicians provide no express opinion as to Claimant's functional abilities but as detailed above, objective evidence indicates Claimant is capable of performing numerous functional abilities. Moreover, the ALJ expressly considered the opinion of Dr. Pyle; however, "based on the additional evidence received at the hearing level," the ALJ found Claimant capable of performing less than a full range of light work. Claimant has not shown that the record before the ALJ was insufficient for the ALJ to make an RFC finding. *See* 20 C.F.R. §§ 404.1527(e)(2), 416.927(e)(2) (explaining opinions on some issues, such a claimant's RFC, are not medical opinions "but are, instead, opinions on issues reserved to the Commissioner . . . ."). Accordingly, Claimant's argument is without merit.

## II. The ALJ properly assessed Claimant's credibility.

Claimant contends the ALJ improperly evaluated his credibility. Pl.'s Mem. at 8. Federal regulations 20 C.F.R. §§ 404.1529(a) and 416.929(a) provide the authoritative standard for the evaluation of subjective complaints of pain and symptomology. *See Craig*, 76 F.3d at 593. Under these regulations, "the determination of whether a person is disabled by pain or other symptoms is a two-step process." *Id.* at 594. First, as an objective matter, the ALJ must determine whether

12

Claimant has a medical impairment which could reasonably be expected to produce the pain or other symptoms alleged. *Id.*; *see also* S.S.R. 96-7p, 1996 SSR LEXIS 4, at *5, 1996 WL 374186, at *2. If this threshold question is satisfied, then the ALJ evaluates the actual intensity and persistence of the pain or other symptoms, and the extent to which each affects a claimant's ability to work. *Id.* at 595. The step two inquiry considers "all available evidence," including objective medical evidence (i.e., medical signs and laboratory findings), medical history, a claimant's daily activities, the location, duration, frequency and intensity of symptoms, precipitating and aggravating factors, type, dosage, effectiveness and adverse side effects of any pain medication, treatment, other than medication, for relief of pain or other symptoms and functional restrictions. *Id.*; *see also* 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3); S.S.R. 96-7p, 1996 SSR LEXIS 4, at *6, 1996 WL 374186, at *3. The ALJ may not discredit a claimant solely because his subjective complaints are not substantiated by objective medical evidence. *See id.* at 595-96. However, neither is the ALJ obligated to accept the claimant's statements at face value; rather, the ALJ "must make a finding on the credibility of the individual's statements based on a consideration of the entire case record." S.S.R. 96-7p, 1996 SSR LEXIS 4, at *6, 1996 WL 374186, at *3.

Here, the ALJ considered Claimant's numerous subjective complaints associated with her medical impairments, including lightheadedness, swelling in her feet, pain in her neck, back, leg and shoulders, headaches, falling and passing out and sadness. (R. 18-19). The ALJ found that Claimant had medically determinable impairments reasonably capable of causing Claimant's subjective symptoms but concluded Claimant's subjective complaints were not fully credible. *Id.* In reaching this conclusion, the ALJ reasoned as follows: (1) the lack of any significant abnormalities found upon physical examinations and objective testing, Claimant's conservative treatment and her failure

13

to pursue physical therapy as recommended by her primary care physician (DDD and back and shoulder back pain) (R. 18, 40, 445); (2) favorable response to her medication regimen, no change in medications since October 2009, no evidence of significant coronary artery disease and no surgical intervention such as angioplasty (hypertension and ischemia) (R. 21, 338, 418, 454); and (3) Claimant's activities of daily living (30-31, 37, 289, 452). (R. 21). Claimant contends the ALJ "engaged in a line of distorting statements regarding the medical record." Pl.'s Mem. at 8.

First, Claimant argues the ALJ improperly relied on Claimant's normal gait and the fact she does not require a cane, stating such findings are "irrelevant" because she suffers from cervical DDD and not back pain. Pl.'s Mem. at 9. It is evident however that in discussing Claimant's DDD, the ALJ was incorporating also findings related to Claimant's back pain. As the ALJ noted, Claimant was diagnosed with both sciatica, a "syndrome characterized by pain radiating from the back into the buttock and into the lower extremity," Dorland's Illustrated Medical Dictionary at 1493 (28th ed. 1994), and low back strain with pain radiating down both legs. (R. 369-70, 380). Thus, in considering Claimant's allegations of back and leg pain, the ALJ properly considered evidence related thereto, including physical examinations indicating Claimant had a normal gait and required no assistive device. Claimant argues further that the ALJ "tried to claim that [Claimant's] condition [DDD and back pain] did not signficantly interfere with her ability to work because her medications *took care of all of her pain*." Pl.'s Mem. at 9 (emphasis added). Claimant misstates the ALJ's finding. The ALJ noted that Claimant's DDD and back pain had been treated conservatively with medication and noted further Claimant's testimony during the administrative hearing that her medications "had helped her pain." (R. 21). No where in the decision does the ALJ contend Claimant was pain free. In fact, while Claimant suggests the ALJ ignored the October 2009

treatment record documenting Claimant's complaint that Tramadol was no longer controlling her pain, the ALJ specifically acknowledged this statement and noted further that two different medications, Flexeril and Darvocet, were prescribed for pain. (R. 20, 448). The ALJ correctly noted that during the administrative hearing, Claimant testified that she had not visited the hospital or doctor "in a long time" because her medications were providing some pain relief. (R. 21, 43-44). While not discussed within the credibility discussion, in his summary of Claimant's testimony, the ALJ acknowledged that Claimant testified her pain was becoming worse. (R. 19, 44). However, Claimant cites no records subsequent to the October 2009 treatment record indicating continued treatment for her pain and the court can find none. Accordingly, the ALJ properly relied on Claimant's testimony that her pain medications offered some relief.

Next, Claimant contends the ALJ improperly relied on the cardiac catheterization findings and the fact Claimant did not require surgical intervention for her ischemia, such as angioplasty, because Claimant does not suffer from "coronary artery disease due to plaque build-up in the arteries" thus, "the lack of plaque in her arteries and therefore no need for an angioplasty is irrelevant to her condition and has nothing to do with the severity of her hypertensive heart disease." Pl's Mem. at 9-10. Claimant's argument is overstated. In considering a claimant's credibility, an ALJ is required to consider both objective and subjective evidence. *See* 20 C.F.R. §§ 404.1529(c), 416.929(c). It is evident from the ALJ's decision that his discussion of Claimant's cardiac catheterization and ischemia was simply a part of his summary of evidence discussed in detail previously in the ALJ's decision regarding Claimant's treatment for chest pain. The first record documenting Claimant's complaints of chest pain is an October 2008 progress report from JMH, noting numerous tests were run, including a cardiac catheterization which did not reveal significant

15

coronary artery disease and a stress test which was positive for ischemia. (R. 19, 338, 344). Subsequent medical records regarding Claimant's chest pain discuss the management of her hypertension, and as the ALJ noted, it had responded favorably to the medication regimen. (R. 21, 454). Thus, it is evident from the ALJ's credibility discussion that he was simply providing a summary of the medical evidence regarding Claimant's chest pain evaluated in detail earlier within his decision. It is unclear how a proper summary of the medical record "is just another incidence of the ALJ playing doctor and coming to erroneous conclusions about the meaning of medical evidence." Pl.'s Mem. at 10.

With respect to Claimant's daily activities, Claimant argues first the ALJ's statement that "in a July 2009 visit with her cardiologist [Claimant] reported that she walked one half mile per day" (R. 21) is "a complete distortion" of the cardiologist's notes and Claimant's testimony. Pl.'s Mem. at 10. Rather, Claimant contends the record notes "that she tried to walk a half mile." *Id.* Despite Claimant's contention to the contrary, Dr. Janis' treatment record from July 2009 specifically states Claimant "stays active walking ½ a mile every day." (R. 452). Moreover, the ALJ specifically acknowledged Claimant's testimony that she tried walking but stopped because she was falling and passing out. (R. 19, 43). It is the within the ALJ's province to weigh the evidence and based on Claimant's statement to Dr. Janis, the ALJ properly found Claimant's testimony as to this issue lacking in credibility. Next, Claimant argues that the ALJ improperly relied on Claimant's statements to Dr. Fernandez regarding her activities of daily living and in particular, her ability to cook meals, make her bed, do laundry and go shopping (R. 21, 289), because Claimant testified during the administrative hearing that a neighbor shops on Claimant's behalf, she rarely leaves the house and only prepares small meals. Pl.'s Mem. at 10. The ALJ acknowledged Claimant's

testimony regarding her activities of daily living, including her testimony that she does not leave the house and relies on a neighbor to get her groceries. (R. 19). However, Claimant's testimony contradicted the statements made to Dr. Fernandez and the ALJ properly relied on such statements in finding Claimant's testimony was not fully credible. Finally, Claimant faults the ALJ for relying on Claimant's testimony regarding her part-time work in 2008. In particular, Claimant contends the ALJ "tried to fault her for attempting to work" and she quit working as a result of syncopal episodes. Pl.'s Mem. at 10; (R. 168). This allegation is overstated. The ALJ specifically found that Claimant's work in 2008 was not substantial gainful activity. (R. 16). Nevertheless, the ALJ properly relied on Claimant's testimony regarding her part-time work in concluding that Claimant's impairments were not as disabling as alleged.

Lastly, Claimant contends the ALJ ignored her testimony regarding her medication side-effects and in particular, drowsiness, lack of concentration and an inability to comprehend questions asked of her. Pl.'s Mem. at 9. In summarizing Claimant's testimony, the ALJ acknowledged Claimant's testimony that her medications "make her drowsy and cause her to lose her train of thought." (R. 18). In discussing Claimant's credibility, the ALJ referenced generally Claimant's complaints of medication side effects but noted Claimant's ability to work up to 60 hours on occasion in 2008 despite the side effects. (R. 21). Thus, it is evident the ALJ did not ignore Claimant's testimony.

It is within the ALJ's province to determine credibility and, in fulfilling that function, the ALJ is entitled to consider inconsistencies between a claimant's testimony and the evidence of record. *See Mickles*, 29 F.3d at 929 ("Subject only to the substantial evidence requirement, it is the province of the [ALJ], and not the courts, to make credibility determinations."). To the extent that the ALJ

17

detailed the relevant facts underlying his finding that Claimant's testimony was not fully credible, his credibility finding is entitled to substantial deference. *See Shively v. Heckler*, 739 F.2d 987, 989 (4th Cir. 1984) (an ALJ's observations regarding credibility should be given great weight). Here, the ALJ comported fully with the credibility evaluation prescribed by Social Security Ruling 96-7p by making findings, supported by reasons, with respect to Claimant's alleged symptoms, the medical record and Claimant's own testimony. While Claimant may disagree with the manner in which the ALJ took account of this evidence, this court cannot re-weigh the evidence. *See Mastro*, 270 F.3d at 176. For the foregoing reasons, Claimant's argument as to this issue is without merit.

## III. The ALJ's RFC is supported by substantial evidence.

Claimant contends the ALJ erred in finding Claimant retained the RFC to perform light work Pl.'s Mem. at 8. An individual's RFC is defined as that capacity which an individual possesses despite the limitations caused by his physical or mental impairments. 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1); *see also* S.S.R. 96-8p, 1996 SSR LEXIS 5, at *5, 1996 WL 374184, at *1. The RFC assessment is based on all the relevant medical and other evidence in the record and may include a claimant's own description of limitations arising from alleged symptoms. 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3); *see also* S.S.R. 96-8p, 1996 SSR LEXIS 5, at *14, 1996 WL 374184, at *5. When a claimant has a number of impairments, including those deemed not severe, the ALJ must consider their cumulative effect in making a disability determination. 42 U.S.C. § 423(d)(2)(B); *see Hines v. Bowen*, 872 F.2d 56, 59 (4th Cir. 1989) (citations omitted) ("[I]n determining whether an individual's impairments are of sufficient severity to prohibit basic work related activities, an ALJ must consider the combined effect of a claimant's impairments."). The RFC assessment "must include a discussion of why reported symptom-related functional limitations

and restrictions can or cannot reasonably be accepted as consistent with the medical and other evidence." S.S.R. 96-8p, 1996 SSR LEXIS 5, at *21, 1996 WL 374184, at *7. Furthermore, the RFC assessment must "consider and address medical source opinions," and if it "conflicts with an opinion from a medical source, the [ALJ] must explain why the opinion was not adopted." S.S.R. 96-8p, 1996 SSR LEXIS 5, at *20, 1996 WL 374184, at *7.

The ALJ's decision indicates that he considered Claimant's impairments in totality before determining Claimant maintained the RFC to perform light work. As described earlier, the ALJ's opinion provides a detailed review of Claimant's medical records, citing medical facts and underlying evidence as to each impairment. In addition, the RFC assessment takes account of Claimant's testimony concerning pain to the extent that this testimony proved consistent with the objective medical evidence before the ALJ. *See Hines v. Barnhart*, 453 F.3d 559, 565 n.3 (4th Cir. 2006) (noting the ALJ need not accept Claimant's subjective evidence to the extent it is inconsistent with the available evidence). Moreover, while a state agency consultant found Claimant capable of performing medium work, the ALJ disagreed based on the additional evidence received at the hearing level. (R. 21, 423). Also, the ALJ's RFC assessment includes consideration of the opinion by Dr. Fernandez and an explanation for according it little weight. (R. 21). While Claimant contends the RFC finding is not supported by substantial evidence based on an erroneous evaluation of Dr. Fernandez' opinion and Claimant's credibility, as detailed above, the court finds the ALJ's consideration of both was proper.

Based on the foregoing, this court finds that the ALJ's RFC determination is supported by substantial evidence. The ALJ analyzed all of the relevant evidence, sufficiently explained his findings and applied the correct legal standards in evaluating Claimant's RFC. Accordingly,

Claimant's argument as to this issue is without merit.

## CONCLUSION

For the reasons stated above, this court RECOMMENDS Claimant's Motion for Judgment on the Pleadings [DE-39] be DENIED, Defendant's Motion for Judgment on the Pleadings [DE-41] be GRANTED and the final decision of the Commissioner be UPHELD.

The Clerk shall send copies of this Memorandum and Recommendation to counsel for the respective parties, who have fourteen (14) days upon receipt to file written objections. Failure to file timely written objections shall bar an aggrieved party from receiving a de novo review by the District Court on an issue covered in the Memorandum and Recommendation and, except upon grounds of plain error, from attacking on appeal the proposed factual findings and legal conclusions not objected to, and accepted by, the District Court.

This, the 30th day of May, 2012.

Robert B. Jones, Jr.
United States Magistrate Judge